IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **PATRICIA VILLARREAL** § | |
| § | |
| *Plaintiff* § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. |
| **CHAMBERLAIN COLLEGE OF** § | |
| **NURSING & HEALTH** § | _____ |
| **SCIENCES, INC.** § | |
| § | |
| *Defendants* § | |
| § | *JURY REQUESTED* |

## PLAINTIFFS' ORIGINAL COMPLAINT

COMES NOW, Patricia Villarreal ("Patricia" or "Plaintiff"), and files this Original Complaint, and in support respectfully show the Court as follows:

### PARTIES

1. Patricia is an individual residing in Fort Bend County, Texas.

2. Chamberlain College of Nursing & Health Sciences, Inc. ("Chamberlain") is a Delaware corporation with the right to transact business in the state of Texas. Chamberlain may be served with process through its registered agent, the Corporation Trust Company, located at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, or wherever else it may be found.

### JURISDICTION

3. The Court has jurisdiction over this lawsuit under 28 U.S.C. §1332(a)(1) and (a)(3) because the Plaintiffs and Defendants are citizens of different U.S. states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

## VENUE

4. Venue is proper in this Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## CONDITIONS PRECEDENT

5. All conditions precedent have been performed or occurred.

## RESPONDEAT SUPERIOR

6. Defendants are legally responsible to the Plaintiffs for the acts and omissions of their employees, agents, servants, and representatives under the legal doctrines of respondeat superior, agency, and/or ostensible agency. As a result thereof, the Defendants are vicariously liable for all wrongful and illegal acts, omissions, and conduct of their employees, agents, servants and representatives.

## MISNOMER/ALTER-EGO

7. In the event any parties are misnamed as a "misnomer" and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiffs contend that such "corporate veils", should be pierced to hold such parties properly included or are no included herein, it is Plaintiffs' contention that such was a "misidentification", in the interest of justice.

8. The Fifth Circuit has found that the "alter ego doctrine permits the imposition of liability upon the parent company for torts and contractual obligations of its subsidiary…" *Miles v. Am. Telephone & Telegraph Co.,* 703 F.2d 193, 195 (5th Cir. 1983). The theory "provides a vehicle for bringing a subsidiary within the reach of the Texas long-arm statute because a close relationship between a parent and its subsidiary may justify a finding that the parent does business in a jurisdiction through the local activities of its subsidiaries, or vice versa." *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1159 (5th Circ. 1983); *Walker v. Newgent* 583 F.2d 163, 167 (5th Cir. 1978).

9.      "Where a parent establishes a subsidiary… and dominates it…that the subsidiary is a mere conduit for the parent's business, the parent should not be able to shift the risk of loss." *United States v. Jon-T Chemicals, Inc.* 768 F.2d 686, 693 (5th Cir. 1985); *Nelson v. Int'l. Paint Co.* 734 F.2d 1084, 1093 (5th Cir. 1984); *Edwards Co. v. Monogram Indus.* 730 F.2d 977, 982 (5th Cir. 1984); *Miles v. Am. Tel. & Tel. Co.* 703 F.2d 193, 195 (5th Cir. 1983).

## FACTS

10.     Patricia began attending Chamberlain in September of 2014, to pursue a nursing degree. Individuals must have a nursing degree in order to take the NCLEX State Board Exam, and thereby become a fully registered nurse.

### The Chamberlain Process to sit for the NCLEX Exam

11.     At the time of Patricia's enrollment in Chamberlain, students were provided one opportunity to not pass one course in their tenure with the program and in order to graduate, students would have to pass a final Capstone Class, at the end of approximately three years of classes. The passing of this class was dependent on an exit exam. Students were given three (3) opportunities to pass this exit exam.

12.     In early 2016, Chamberlain changed how the final Capstone Classes were evaluated in that exit exams were no longer required to pass the Capstone Class.

13.      A few months later, in October of 2016, Chamberlain again changed how passage of the final Capstone class was determined in that students were now required to take and pass an Academic Assessment 3 Exam. If a student received a 72 or higher, they would pass the Academic Assessment 3 Exam and thereby graduate from Chamberlain.  If they did not pass the Academic Assessment 3 Exam they still had the opportunity to graduate from Chamberlain if they passed the A4 Exam. If a student did not pass the A4 exam, and had already failed a course prior to the

Capstone, Chamberlain dismissed the student from the program. If the student had not failed a course previously, they would be provided a further remediation opportunity.

14. Patricia entered Chamberlain with the understanding that she would take 3 years of courses, while paying for 3 years of tuition, and then she would have 3 opportunities to pass her final exit exam to receive her nursing degree. Chamberlain then changed the requirements by removing the exit exam, and then again provided a new set of rules that allowed for two opportunities to pass some version of an exit exam, to finally a "one and done" policy for obtaining a Chamberlain nursing degree. Two years prior to this new scheme, Patricia unfortunately did not pass one course. Patricia attempted to use Chamberlain provided tutors, however those tutors did not return calls, emails, texts, or show up to meetings.

15. This entire "schema" changed **again** in February of 2017. The A4 exam was taken away. Thus, if a student no longer made at least a 72 on the Academic Assessment 3 Exam, and they had failed one course in their tenure prior to the Capstone, Chamberlain dismissed the student from the program.

16. Patricia took the Academic Assessment 3 exam and received a score lower than the required 72 score for passage. Upon receiving her score, a Chamberlain staff member asked her to go to a room in the campus' library. In that room, Chamberlain staff surrounded her and ordered her off the campus. Chamberlain security, for no cause, escorted Patricia off campus.

17. Chamberlain's shift in exam strategy was one to increase the percentage of passage rates of the NCLEX exam, however, at the cost of students' abilities to pass based on representations made by Chamberlain initially. Patricia never approved of new rules, and she had no obligation to accept unilateral changing systematic requirements. In essence, Chamberlain received all the

Plaintiffs' Original Complaint

tuition for a student pursing a nursing degree, but then created new obstacles at the end of the program to prevent students from earning their nursing degree

## CAUSES OF ACTION

## COUNT 1 – DECEPTIVE TRADE PRACTICES ACT

18. Plaintiffs hereby incorporate paragraphs 1 through 17 as if fully set forth herein.

19. Plaintiffs' cause of action under the Deceptive Trade Practices Act, arises from Chamberlain's engagement in false, misleading, and deceptive acts and practices that Patricia has relied on to her detriment. Tex. Bus. & Com. Code §17.46 et seq. Specifically, Chamberlain: (1) causes confusion or misunderstanding about the course, sponsorship, approval or certification of goods or services. Tex. Bus. & Com. Code §17.46(b)(2); (2) Represented that goods or services have sponsorship approval, characteristics, ingredients, uses, benefits, or quantities they do not have. Tex. Bus. & Com. Code §17.46 (b)(5); (3) Advertised goods or services with intent not to sell them as advertised. Tex. Bus. & Com. Code §17.46(b)(9); (4) Represented that an agreement confers or involves rights, remedies, or obligations that it does not, or that are prohibited by law. Tex. Bus. & Com. Code §17.46(b)(12); and (5) Failed to disclose information about goods or services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer to enter into a transaction that the consumer would not have entered into if the information had been disclosed. Tex. Bus. & Com. Code §17.46(b) (24).

20. Plaintiff relied on the foregoing false and misleading acts and practices to their detriment. Defendants' DTPA violations were committed knowingly and/or intentionally, which entitles Plaintiffs to recover treble economic damages under Section 17.50(b)(1) of the Texas Business & Commerce Code. Further, Defendants engaged in unconscionable conduct and actions which were

glaringly noticeable, flagrant, complete and unmitigated, which entitles Plaintiffs to recover damages for mental anguish under Section 17.50(a)(3) of the Texas Business and Commerce Code.

## COUNT 2 – BREACH OF CONTRACT

21. Paragraphs 1 through 20 are incorporated by reference.

22. The relationship between Patricia and Chamberlain, wherein she paid tuition in exchange for an education based on the criteria set out when Patricia began with Chamberlain, is a valid and existing contractual relationship.

23. Under Patricia's contract with Chamberlain, she was required to pay money to Chamberlain in order to have the ability to receive an education and the ability to take a final exam to authorize her to sit for the NCLEX State Board Exam.

24. All conditions precedent under the contract was being performed by Patricia, including payment of tuition.

25. Chamberlain breached the terms of its standardized contract with Patricia by failing to provide her with the promised product and services as contracted.

26. As a result of Chamberlain's breach of its contract, Patricia has been damaged in an amount to be determined at trial.

## COUNT 3 – MONEY HAD AND RECEIVED

27. Paragraphs 1 through 27 are incorporated by reference.

28. Chamberlain improperly received approximately $70,000.00 as a result of the conduct alleged above.

29. As a result, Patricia conferred a benefit onto Chamberlain to which Chamberlain is not entitled. Chamberlain has knowledge of this benefit, wrongfully and deceptively obtained this benefit, and has voluntarily accepted and retained the benefit conferred on it. Chamberlain will be

unjustly enriched if it is allowed to retain such funds and, therefore, a constructive trust should be imposed on all monies wrongfully obtained by Chamberlain and the money should be disgorged from Chamberlain, and returned to Patricia.

## COUNT 4 – FRAUD

30. Paragraphs 1 through 30 are incorporated by reference.

31. Chamberlain has intentionally and falsely represented to Patricia that she would have separate opportunities to pass exams at Chamberlain that would enable her to sit for the NCLEX State Board Exam, specifically the A3 and A4 exams.

32. Instead of having these opportunities, which were provided as opportunities for students, after accepting tuition for a third year in a row from Patricia, Chamberlain changed its policies removing the A4 exam, and implementing a policy that if one class had not been passed previously, the A3 exam was the only option to pass and sit for the NCLEX. Chamberlain's representations of having opportunities the two opportunities to enable students to sit for the board exams were false, and Chamberlain knew the representations were false when it made them, or made the representations recklessly and without regard for its truth.

33. Chamberlain intended that Patricia rely on the representations.

34. Patricia reasonably and justifiably relied to her detriment on Chamberlain's misrepresentations.

35. As a proximate result of Chamberlain's misrepresentations, Patricia was damaged in an amount to be proven at trial.

36. Patricia's reliance on Chamberlain's representations were a substantial factor in causing her harm.

## CONDITIONS PRECEDENT

38. All conditions precedent to Plaintiff's claims against the Defendant have occurred, been performed, satisfied, or otherwise fulfilled.

39. Plaintiff made demand on Defendant and presented her claims to Defendant pursuant to the Texas Deceptive Trade Practice and Consumer Protection Act ("DTPA"), and the breach of contract provisions of the Texas Civil Practice & Remedies Code.

## JURY DEMAND

40. Plaintiff respectfully requests a trial by jury.

## PRAYER

For these reasons, Plaintiff seeks judgment against Defendant for;

a. compensatory and actual damages in an amount deemed sufficient by the trier of fact;

b. costs of court;

c. interest allowed by law for prejudgment and/or post-judgment interest; and

d. such other and further relief, both general and special, at law or in equity, to which Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

PARANJPE & MAHADASS LLP
By: /s/ Tej R. Paranjpe
Tej P. Paranjpe
Texas State Bar No. 24071829
LEAD COUNSEL
J. Benjamin Black
Texas State Bar No. 24073927
3701 Kirby Drive, Suite 530

Houston, Texas 77098
(832) 667-7700 (Telephone)
(832) 202-2018 (Facsimile)
tparanjpe@pandmllp.com
bblack@pandmllp.com

Plaintiffs' Original Complaint